Edward J. BRENNER, Commissioner of Patents, Appellant,

v.

The STATE OF ISRAEL, Ministry of Defence, Appellee.

No. 21554.

United States Court of Appeals District of Columbia Circuit.

Argued May 16, 1968.

Decided Aug. 12, 1968.

Mr. Jere W. Sears, Washington, D. C., Attorney, with whom Mr. Joseph Schimmel, Solicitor, was on the brief, for appellant.

Mr. Sidney Neuman, Chicago, Ill., with whom Messrs. Thomas E. Smith, Chicago, Ill., and Ellsworth H. Mosher, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and WRIGHT and McGOWAN, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of the District Court in a proceeding under 35 U.S.C. § 145. It involves the proper interpretation to be given to two sections of the Patent Act of 1952.[1] There are

1. 35 U.S.C. §§ 119, 251.

no facts at issue. It is stipulated that appellee *without deceptive intention* neglected to file in the Patent Office the "certified copy of the original foreign application" for a patent which Section 119 requires to be filed "before the patent is granted," if the applicant wishes to avail himself of the benefits of the prior application. Less than three weeks after the U. S. patent was issued by the Patent Office, appellee discovered that, due to a clerical error, it had failed to file the required certified copy. It acted immediately to repair its mistake by sending the Patent Office the necessary copy, and by applying for a reissue of its patent with the priority rights included.

The Board of Patent Appeals considered appellee's reissue application, but concluded that it could not be granted, because of the language in 35 U.S.C. § 119[2] which makes the filing of a certified copy a specific prerequisite for the obtaining of a right of priority. The District Court, on cross-motions for summary judgment, granted appellee the relief requested. It found that 35 U.S.C. § 251,[3] which provides for the reissue of defective patents, was sufficiently broad in application to overcome the literal language of 35 U.S.C. § 119, and to entitle appellee to a reissued patent to include the priority rights which Section 119 gives to applicants who have previously obtained certain foreign patents.[4]

We affirm the District Court's decision. There is force in appellant's contention that Section 119 is a mandatory provision which specifically and without equivocation prohibits the granting of a priority right unless its procedural requirements are fulfilled. We also understand the purpose which arguably underlies these stringent requirements, *i. e.,* all the information which a potential infringer or copier may need in order presently to ascertain his rights should be collected in one place where it can easily be found and evaluated. Nevertheless, to ascertain the will of Congress[5] in this very narrow context, care

2. No application for patent shall be entitled to this right of priority unless a claim therefor and a certified copy of the original foreign application, specification and drawings upon which it is based are filed in the Patent Office before the patent is granted, or at such time during the pendency of the application as required by the Commissioner not earlier than six months after the filing of the application in this country. Such certification shall be made by the patent office of the foreign country in which filed and show the date of the application and of the filing of the specification and other papers. The Commissioner may require a transaction of the papers filed if not in the English language and such other information as he deems necessary.

3. Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

4. An application for patent for any invention filed in this country by any person who has * * * previously regularly filed an application for a patent for the same invention in a foreign country * * * shall have the same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country * * *.

Moreover, 35 U.S.C. § 104 prohibits the introduction of evidence of a date of invention in a foreign country other than by the use of Section 119 in any proceedings before the Patent Office or in the courts.

5. Legislative history is cogently cited to us by appellant. *See* H.R.REP.No. 1923, 82d Cong., 2d Sess. (1952); S.REP. No. 1979, 82d Cong., 2d Sess. (1952); Hearings on H.R. 3760 Before Subcomm. No. 3 of the Comm. of the Judiciary, 82d Cong., 1st Sess. (1951). Nevertheless, we do not think it dispositive of this issue since it speaks only to the desirability of having the certified copy filed in the Patent Office.

must be taken before concluding that it really intended that a trivial clerical error, such as the one which occurred here, should operate forever to deprive a patent applicant of a priority right to which he would otherwise be entitled.

 We do not think it did. In fact, Congress placed in the Patent Act another provision, Section 251, which in our view controls the disposition of this case. This section provides that "[w]henever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid * * * by reason of the patentee claiming more or less than he had a right to claim in the patent," the Commissioner shall grant him the reissue of the patent with the faults corrected. The plain meaning of this section would seem to cover this situation. The patent issued was partly inoperative (insofar as it did not include the priority right), and the patentee (by failing to file the certified copy, although it did inform the Patent Office of its intention to claim the priority right and the existence of the foreign patent appears on the face of its application) did claim less than he had a right to claim. In any event, the purpose of this section is to allow patentees to correct inadvertent errors without penalty other than the payment of a small fee. This was such a case.

 Neither party to this appeal, although pressed by us to do so, came forward with a lucid explanation of the practical consequences which might ensue from this resolution of their dispute. Particularly in this litigation it is difficult to discern what substantial interest

appellee is protecting. It has been over a year since it received the U. S. patent and, under 35 U.S.C. § 102(b), it is impossible for anyone to challenge the patent's validity in an interference proceeding. Hypothetically, however, it is perhaps still possible that appellee may wish (or need) to use the priority right in order to establish a prior art reference,[6] or that it seeks assurance that it will be able to use the priority right in the event it is called upon to assert the validity of the patent in a future infringement suit.[7]

The Patent Office, on the other hand, has not convinced us that granting appellee the priority right through reissue would inevitably operate unfairly to the detriment of third parties. First, it should be pointed out that hypothetical third parties might have been disadvantaged only during the short period between the granting of the patent and its reissue. Second, a potential infringer or copier interested in appellee's patent would, upon looking at the Patent Office records, have immediately been placed on notice that an identified foreign patent existed and that claim for priority founded upon it had been filed; he should not, with this knowledge, have been entitled to rely solely upon appellee's technical failure to file the certified copy of the foreign application.

We need only assay the interests of such hypothetical third parties, however, to the extent that we are satisfied that granting the reissue would operate unfairly to deprive them of the fruits of reasonable action taken in reliance on a faulty application. We think that it is altogether possible that Section 252[8] can

---

6. *Compare* Eli Lilly & Co. v. Brenner, 248 F.Supp. 402 (D.D.C.1965), rev'd, 126 U.S. App.D.C. 171, 375 F.2d 599 (1967), *with* Application of Hilmer, 359 F.2d 859, 53 C.C.P.A. 1288 (1966).

7. See note 4 *supra*.

8. No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to

continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant

be read broadly enough to protect a deserving third party in this kind of situation. In any event a court sitting in equity, in a dispute between a patentee who had received a reissued patent with the priority right included and an infringer who had, with no warning of any kind, honestly relied on the original patent without the priority right, could justly accommodate these conflicting claims in the light of the particular circumstances.

Affirmed.

of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.