O’MALLEY, Circuit Judge,
concurring.
I concur in the judgment the majority reaches—the decision of the Board of Patent Appeals and Interferences (“the Board”) in this ease cannot stand. I do not join in the majority’s reasoning, however. To the extent the majority opinion concludes that the only basis upon which to premise reversal is the existence of In re Doll, 57 CCPA 822, 419 F.2d 925 (1970) in this court’s repertoire of decided cases, the opinion is inadequate. To the extent the majority opinion is no more than a begrudging nod to Doll’s precedential effect with an invitation to reconsider that decision, the majority opinion is wrong. Indeed, it is wrong on multiple levels.
The plain language of 35 U.S.C. § 251, coupled with the legislative history, longstanding unambiguous regulations implementing the statute, all relevant case law, and common sense, all compel reversal in this case. Doll is but one data point in that properly structured statutory analysis.
Section 251 permits an inventor to apply for a reissued patent whenever he believes his patent is “wholly or partly inoperative or invalid” due to defects in the specification or in the scope of the claim language employed. 35 U.S.C. § 251. Once a reissue is sought, the same provisions of Title 35 governing original patent applications— including those provisions permitting the filing of continuations and divisional applications—are “applicable to applications for reissue of a patent.” Id. Other than limitations against introducing “new matter” into the application for reissue (a restriction not at issue here), the only other limitation on reissue practice set forth in § 251 is that the original reissue application be timely—i.e., filed within two years of the grant of the original patent. Id. Nothing on the face of § 251 restricts the nature of any later-filed continuing reissue applications or ties the substance of such continuations to the broadened claims specified in the initial application. Indeed, the United States Patent and Trademark Office (PTO) points to no statutory language—either in § 251 or elsewhere—to support the Board’s ruling.
Like its text, nothing in the legislative history to § 251 indicates any desire to limit the way in which the provisions of Title 35 “relating to applications for patent shall be applicable to applications for reissue of a patent.” See 35 U.S.C. § 251. The legislative history to the Patent Act of 1952, where section § 251 first appeared, spoke only to the desire to codify both the fact of reissue practice and the two year post grant time period within which such reissue practice must be initiated. See S.Rep. No. 82-1979, at 26 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2419; H.R.Rep. No. 82-1928, at 26 (1952) (“A two year period of limitation on applying for broadened reissues is added, codifying the present rule of decision with a fixed period.”).
Consistent with § 251’s language and legislative history, all PTO governing rules and regulations have—for decades—made clear that any timely intent to broaden via reissue permits subsequent attempts to broaden via continuation practice author *1357 ized under Title 35. Thus, PTO Rule 175 requires only that “at least one error being relied upon as the basis for reissue” be identified in the oath accompanying a reissue application, clearly implying that other errors may be “relied upon” even if not identified. 37 C.F.R. § 1.175(a)(1). And, the PTO’s own Manual of Patent Examining Procedure (MPEP) repeatedly makes clear that, “if intent to broaden is indicated in a patent reissue application within the two years, a broadened claim can be presented in a continuing reissue application after the two year period.” MPEP § 1412.03 (8th ed. 8th rev. July 2010). This is true “even though the broadened claim presented after the two years is different than the broadened claim presented within two years.” Id. The PTO’s continuing public pronouncements regarding the operation of § 251, while inconsistent with the position it takes here, are consistent with the plain meaning of the statute and its legislative history.
The MPEP and PTO Rule 175 are, moreover, consistent with all relevant case law interpreting § 251. As the majority notes, Doll concluded that § 251’s time limits are applicable only to the first broadening reissue application and do not, accordingly, bar further broadening changes thereafter. 419 F.2d. at 928. This court has twice reaffirmed that reading of § 251, moreover. See In re Graff, 111 F.3d 874, 877 (Fed.Cir.1997) (“The court in Doll simply held that the reissue applicant, in the course of prosecution of the reissue application, was not barred from making further broadening changes in the claims.”); In re Fotland, 779 F.2d 31, 34 (Fed.Ch-.1985) (“In Doll the Court of Customs and Patent Appeals held that when a broadening reissue application was on file within the two year period, the claims could be further broadened after the two year period.”). As the majority opinion makes clear, the PTO’s efforts to distinguish those cases so as to avoid the need to comply with their holdings stretch credulity.
In the end, the PTO ignores every step in a proper statutory construction analysis and falls back on policy concerns it claims allow it to ignore the face of § 251 and to disregard both its own and this court’s pronouncements regarding the proper operation of that governing provision. Given the limited life of additional claims which can be sought through the type of continuing reissue practice at issue here, the protections afforded by the intervening rights provisions in 35 U.S.C. § 252, and the countervailing implementation concerns the PTO’s new standard creates, however, the PTO’s policy arguments are overstated—substantially so. Even if those policy statements were not overstated, they would be an insufficient reed upon which to rest such a sweeping change in the law.
I agree that the Board’s decision and PTO rejection must be reversed, and the matter remanded for further processing of the appellant’s third reissue application. To the extent the majority fails to conduct a full statutory analysis and to recognize that each step in such a proper analysis compels that result, however, I decline to join the majority’s reasoning and write separately to point out the important gaps therein.